Allen Sharkey Pate and Martha Jane Pate v. Commissioner.
Pate v. Commissioner
Docket No. 5417-68.
United States Tax Court
T.C. Memo 1970-205; 1970 Tax Ct. Memo LEXIS 156; 29 T.C.M. (CCH) 899; T.C.M. (RIA) 70205; July 21, 1970, Filed *156 In the latter part of 1964 or early 1965 petitioners discovered a crack in the concrete foundation slabupon which 900 their house was constructed, which petitioners claim was caused by subsoil shrinkage as a result of a prolonged drought. Shortly thereafter, for other reasons, petitioners moved out of the house and attempted to sell it, without success. The mortgage on the property was foreclosed in the spring of 1966 as a result of which petitioners lost their equity in the property. Held, petitioners failed to prove they are entitled to a casualty loss deduction for 1966 in the amount of the loss they incurred on disposition of the property. Lucius B. Dabney, Jr., Dabney & Dabney, Vicksburg, Miss., for the petitioners. Frederick T. Carney, for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined a deficiency in petitioners' income tax for the year 1966 in the amount of $60.10. The only issue for decision is whether petitioners are entitled to a deduction of $750 as a casualty loss in the year 1966 as a result of a crack in the foundation of their house allegedly caused by a severe drought in 1965 or prior thereto. Petitioners are husband and wife who filed a joint Federal income tax return for the year 1966 with the Director, Internal Revenue Service Center in Chamblee, Ga. At the time the petition herein was filed petitioners were residents of Vicksburg, Miss., having previously resided in Spring Hill, La. When this case was called *158 for trial, respondent filed a motion for judgment on the pleadings. The Court took respondent's motion under advisement and proceeded to hear the evidence offered by the parties. The evidence consisted of a short oral stipulation of facts, with petitioners' income tax return for the year 1966 included as an exhibit, and the oral testimony of Allen Sharkey Pate, who will hereinafter be referred to as petitioner. While the Court has considerable doubt that the facts alleged in the petition, if accepted as true for purposes of respondent's motion, would support petitioners' claim for a casualty loss deduction for the year 1966, the Court, having heard the evidence offered, prefers to decide the issue on the facts elicited from that evidence. Findings of Fact The stipulated facts are found as stipulated. Those facts and the evidence presented by petitioners support the following findings of fact. Petitioner graduated from Virginia Military Institute in 1956 with a Bachelor of Science degree in civil engineering. He was thereafter employed by the International Paper Co. as an associate engineer and, except for a period of service in the U.S. Navy, continued to be employed by that *159 company up to the date of this trial. Since his return from military service, petitioner's duties have been involved with the design of foundations for papermills and buildings, including the sampling of soil to determine the best type of foundation that might be used for construction in particular locations. His employment requires him to move frequently. Petitioner was transferred by his employer to Spring Hill, La., in the latter part of 1962 and he purchased a home at 706 Fifth Street, N.E., in Spring Hill in the early part of 1963, and immediately moved into it. In the latter part of 1964 or early 1965, after a prolonged period of drought in the area, petitioner first noticed that there was a crack in the concrete slab upon which the house had been constructed. Petitioner concluded that the crack had been caused by subsoil shrinkage as a result of the drought but did not consider the damage to his house serious. Other houses in the neighborhood had also suffered cracked foundations, some with results more severe than petitioner's, while others did not appear to be damaged at all. While the houses in the neighborhood with no apparent damage were readily salable at a profit, or *160 at least no loss, to the sellers, the buying public was slow to purchase the houses in the area with apparent cracks in the foundations and elsewhere. In the latter part of 1964 or early 1965 petitioner was transferred by his employer to Mobile, Ala. Petitioners moved out of the Spring Hill house at that time and put it on the market for sale by realtors. They did not occupy the house thereafter. After unsuccessfully attempting to sell the house for about a year at a price which would permit petitioner to recover his cost in the property, petitioner asked the mortgageholder to take over the property without recourse against petitioners, but this was not accomplished. 901 Sometime during the year 1965 petitioner had the house and property appraised on two different occasions. Those appraisals reflected a value of $3,000 and $3,500 less than the outstanding principal owing under the mortgage on the property. However, petitioner did not believe that the crack in foundation of the house made it structurally unsound or should cause so great a reduction in value, so he continued his attempts to sell the property at a price that would permit him to recover his equity. Finally, being *161 unsuccessful in this endeavor, in the spring of 1966 petitioner caused the mortgage on the house to be foreclosed, as a result of which he lost his equity in the property in the amount of $850. Petitioners had no insurance that would cover any damage to the house as a result of the crack in the foundation and had no claims for reimbursement for such damage pending on December 31 of either 1964 or 1965. On their income tax return for the year 1966, which is the only year before the Court, petitioners deducted the sum of $750 as a casualty loss resulting from the crack in the foundation of the house, representing petitioners' loss of their equity in the property upon foreclosure of the mortgage in the amount of $850, less $100 casualty loss which is not deductible under the law. Respondent disallowed the casualty loss deduction for the year 1966. In his opening statement and on brief, counsel for respondent relied on the argument that the casualty loss occurred prior to 1966 and hence no amount of casualty loss is allowable as a deduction for the year 1966; and that argument is also the basis for respondent's motion for judgment on the pleadings. Respondent does not argue that any *162 loss incurred as a result of the crack in the foundation of petitioners' house does not qualify as a casualty loss. OPINION Section 165(a) of the Internal Revenue Code of 1954 allows "as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise." Section 165(c) provides that "In the case of an individual, the deduction under subsection (a) shall be limited to * * * (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft"; and limits the amount of the deduction for such losses to the amount the loss arising from each casualty exceeds $100. Section 1.165-1, Income Tax Regs., provides, in pertinent parts, [1] that to be allowable as a deduction under section 165(a) a loss must be evidenced by closed and completed transactions, fixed by identifiable events and actually sustained during the taxable year; and that a loss shall be allowable as a deduction under section 165(a) only for the taxable year in which sustained, which, for this purpose, is the year in which the loss occurs as evidenced by closed and completed transactions *163 and as fixed by identifiable events occurring in such taxable year. If, however, a casualty occurs which results in a loss and in the year of such casualty there exists a claim for reimbursement with respect to which there 902 is a reasonable possibility of recovery, no portion of the loss with respect to which reimbursement may be received will be considered sustained for purposes of section 165 until it can be ascertained whether or not such reimbursement will be received. But if in the year of the casualty a portion of the loss is not covered by a claim for reimbursement, such portion of the loss is considered sustained during the taxable year in which the casualty occurs. As a general rule the amount of a casualty loss that may be deducted is the lesser of (1) the difference between the fair market value of the property immediately before and after the casualty, or (2) the adjusted basis of the property. This regulation has been applied with approval by this Court. See Donald H. Kunsman, 49 T.C. 62. *164 It is clear that the only damage to petitioners' house that could qualify as a casualty loss was the crack in the foundation of the house which petitioner claims was caused by subsoil shrinkage as a result of a prolonged drought. This damage was first discovered by petitioner in late 1964 or early 1965 and hence the casualty or event which caused whatever loss petitioner suffered must have occurred prior to that time. There is no evidence that the damage to petitioners' house increased at all after he discovered the crack in the foundation. Any loss suffered by petitioner as a result of a casualty occurred not later than the time the damage was discovered, which was in late 1964 or early 1965. Generally casualty losses are deductible in the year the loss is sustained; although this is not necessarily the year of the casualty. Donald H. Kunsman, supra. There are exceptions to the general rule where the loss or the full extent of the loss was not or by its very nature could not be known until a subsequent year. United States v. Barret, 202 F. 2d 804 (C.A. 5, 1953); sec. 1.165-1(d)(1), Income Tax Regs. But we cannot find that the facts in this case bring *165 it within one of the execptions to the general rule. Petitioner was aware of the damage caused by the casualty or event in 1965. He also was aware in 1965 that this damage would probably result in a loss to him. The only evidence of the amount of that loss which appears in the record is petitioner's testimony that on two different occasions during 1965 he had the property appraised and one appraisal valued the property at $3,000 less than the principal due on his mortgage and the other one valued it at $3,500 less than the principal due on the mortgage. In the light of petitioner's testimony that other similar but undamaged houses in the neighborhood were selling at no loss to the sellers this would appear to be the best evidence we have as to the amount or extent of the loss caused by the casualty. In any event, petitioner could have determined with reasonable certainty the extent of the loss caused by the preceding casualty prior to the end of 1965. Furthermore, petitioner had no claim for reimbursement for any loss resulting from the casualty pending at the end of 1965. Consequently, the general rule for determining the year of deductibility of a casualty loss is applicable, and *166 we conclude that the loss was sustained prior to 1966 and petitioners are not entitled to a casualty loss deduction for the year 1966. Petitioners allege in their petition and argue on brief, that the loss was not determined until 1966 when they disposed of the house; that they made every effort, in an attempt to diminish their loss, to dispose of the house at more than the appaised values; and that they suffered damages from the cracked slab in the amount of $850 when they disposed of the house with a loss of their equity in that amount in 1966. Petitioners rely on United States v. Barret, supra, to support their contention. That reliance is misplaced. In Barret, cedar trees were damaged by a severe freeze which occurred during the years 1943 and 1944. In an effort to save as many of the trees as possible, the taxpayer hired a landscape gardener. It was finally determined in 1946 that several of the trees could not be saved and had to be removed. The Fifth Circuit, in upholding the deductibility of the loss in 1946, stated: Of course, the injury to the trees occurred in December, 1943, and January, 1944. But the extent of the damage, and the effect upon the trees *167 were neither known nor ascertainable at that time. When a tree is damaged by freezing, its death is neither certain nor instantaneous. The damage here was latent and uncertain. * * * But when in the Spring of 1946 it was apparent that the trees could not be saved, he removed them and then claimed his loss. That is when the "loss," as distinguished from the "injury," was actually consummated and became ascertainable. * * * 903 That case is readily distinguishable from the situation before us, for here the damage to the foundation of petitioners' residence was neither latent nor uncertain. To the contrary, the damage to the foundation was not concealed nor unknown. Furthermore, the damage to the foundation of petitioners' residence was consummated and became ascertainable by competent appraisal in 1965. Here, unlike the situation in Barret, there can be no doubt that both the injury and the loss occurred in the same year (1965 or before). See Jane U. Elliott, 40 T.C. 304. The sale of petitioners' house in 1966 at a loss was not an event which evidenced the loss resulting from a casualty; it evidenced only petitioners' loss on the sale of the property. But even if *168 we could conclude here that the full extent of petitioners' casualty loss was not or could not be known until 1966, we are doubtful that petitioner has presented evidence from which we could determine the amount of that loss in 1966. The only evidence we have before us is that in 1966 in some unexplained way petitioner caused the mortgage on the property to be foreclosed as a result of which petitioners lost their equity in the property. Such is hardly evidence sufficient to prove the amount of a loss suffered from a casualty which occurred more than a year earlier, the damage from which became apparent at the time. Furthermore, the testimony of petitioner causes us to have doubts as to whether a casualty loss was in fact sustained within the meaning of section 165(c); but we do not decide that issue. Decision will be entered for the respondent. Footnotes
1. Sec. 1.165-1. Losses. * * * (b) Nature of loss allowable. To be allowable as a deduction under section 165(a), a loss must be evidenced by closed and completed transactions, fixed by identifiable events, and * * * actually sustained during the taxable year. * * * * * * (d) Year of deduction. (1) A loss shall be allowed as a deduction under section 165(a) only for the taxable year in which the loss is sustained. For this purpose, a loss shall be treated as sustained during the taxable year in which the loss occurs as evidenced by closed and completed transactions and as fixed by identifiable events occurring in such taxable year. * * * (2)(i) If a casualty or other event occurs which may result in a loss and, in the year of such casualty or event, there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. * * * (ii) If in the year of the casualty or other event a portion of the loss is not covered by a claim for reimbursement with respect to which there is a reasonable prospect of recovery, then such portion of the loss is sustained during the taxable year in which the casualty or other event occurs. * * * Sec. 1.165-7. Casualty losses. * * * (b) Amount deductible. (1) General rule. In the case of any casualty loss whether or not incurred in a trade or business or in any transaction entered into for profit, the amount of the loss to be taken into account for the purposes of section 165(a) shall be the lesser of either - (i) The amount which is equal to the fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty; or (ii) The amount of the adjusted basis prescribed in § 1.1011-1 for determining the loss from the sale or other disposition of the property involved.↩